IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 6, 2002 Session

## HERMAN S. HOWARD, ET AL. v. AMERICAN INDUSTRIES SERVICES, INC., ET AL.

### Appeal from the Chancery Court for Davidson County
No. 00-1478-III     Ellen Hobbs Lyle, Chancellor

### No. M2001-02711-COA-R3-CV - Filed December 11, 2002

The Chancery Court of Davidson County dismissed the complaint in this case for the plaintiffs' failure to respond to discovery requests. The plaintiffs assert on appeal that the chancellor abused her discretion. We affirm the chancery court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN, J. and THOMAS W. GRAHAM, SP. J., joined.

Peter H. Curry and D. Alan Mingledorff, Nashville, Tennessee, for the appellants, Herman S. Howard, American Direct Marketing, Inc., International Media, Inc. and The Media Group, Inc.

Kenneth M. Bryant, E. Todd Presnell, and David L. Johnson, Nashville, Tennessee, for the appellees, American Industries Services, Inc. and Raymond Tuppatsch.

### OPINION

### I.

Herman S. Howard, American Direct Marketing, Inc., International Media, Inc., and The Media Group, Inc. sued American Industries Services, Inc. and Raymond Tuppatsch alleging fraud and breach of a fiduciary duty. The complaint sought a declaratory judgment, an injunction, an accounting, damages, and the imposition of a resulting trust on the ownership of American Industries in favor of Media Group or Mr. Howard.

Mr. Howard owns the plaintiff companies, and they market products to the public through sales to retailers and direct advertising. In order to deliver the products to the consuming public, the marketing entities use a "fulfillment company", which stores the product, takes the customer's order,

and mails out the goods. American Industries, a Delaware corporation with its principal place of business in Nashville, served as the fulfillment company for the plaintiff corporations.

In short, this dispute started over the ownership of American Industries and an employee leasing company called Mood Cosmetics, Inc. The legal title to the shares of each company is in the name of Mr. Tuppatsch, who at one time served as Mr. Howard's financial advisor and confidant. Mr. Howard alleges that Mr. Tuppatsch acquired the shares as Mr. Howard's nominee and as an accomodation to him, but that as a result of Mr. Tuppatsch's fiduciary relationship to Mr. Howard he has caused the transfer of millions of dollars to Mood Cosmetics and American Industries, all to Mr. Tuppatsch's own benefit.

Upon the filing of the complaint, the plaintiffs obtained a restraining order requiring the defendants to continue providing fulfillment services to the plaintiffs. The court, however, imposed a condition that the plaintiff pay for the services and pay 50% of the storage services provided by the defendants. The other 50% of the storage costs was placed in an escrow account controlled by the plaintiffs' lawyers. After a hearing, the court made the order a temporary injunction but extended its effect only to June 23, 2000. The deadline was subsequently set back to January 31, 2001, and the plaintiffs finally completed the removal of their products on February 13, 2001. By that time, however, the plaintiffs owed the defendants $278,047.55 under the terms of the court's orders. On April 6, 2001 the court ordered the payment of that amount by April 12, 2001, but denied the defendants' motion that the plaintiffs be held in contempt of court. Under a threat by the court to dismiss all of their claims, the plaintiffs finally paid the accrued costs, interest, and attorneys fees on June 29, 2001.

By the time the court finally dismissed all claims on August 1, 2001, the court had previously dismissed any claim Mr. Howard had to ownership of the two companies. The court held that the plaintiffs were judicially estopped from asserting any claim of ownership in the companies because of Mr. Howard's sworn testimony in numerous prior legal proceedings that he had no interest in the companies and that they in fact belonged to Mr. Tuppatsch. The plaintiffs had also previously abandoned a claim that Mr. Tuppatsch had usurped the opportunity to acquire the two companies. These claims are not a part of this appeal.

The only claim outstanding after the dismissal of the ownership claim was a fraud claim against Mr. Tuppatsch individually. The court had ordered the plaintiffs to amend their complaint to allege with particularity the facts supporting their fraud claim against Mr. Tuppatsch. *See* Tenn. R. Civ. P. 9.02. Despite record evidence to the contrary, the amended complaint restated allegations that Mr. Howard learned for the first time in March of 2000 that Mr. Tuppatsch was asserting that he owned American Industries and Mood Cosmetics. Nevertheless, the complaint asserted that Mr. Tuppatsch, after he acquired the two companies in 1994, continued to represent to Mr. Howard that the companies were operating for Mr. Howard's benefit and were only collecting enough funds to cover their operating expenses. In actuality, the complaint alleges, Mr. Tuppatsch, through his authority as defacto comptroller of the plaintiff corporations, had caused millions of dollars to be transferred to his own companies. As the court succinctly stated in its order dismissing the fraud

claim, the plaintiffs claim "that defendant Tuppatsch engaged in a program and course of conduct of diverting and transferring the funds of plaintiffs and converting the funds to his own use and benefit ."

## II.

A trial court is authorized by the Rules of Civil Procedure to dismiss a plaintiff's claim for failing "to serve answers or objections to interrogatories submitted under Rule 33 . . . ." *See* Rule 37.02(C); Rule 37.04(2). An evasive or incomplete answer is treated the same as a failure to answer, Rule 37.01(3). The trial judge's action involves an exercise of discretion that will not be disturbed in the absence of an affirmative showing of abuse. *Brooks v. United Uniform Co.*, 682 S.W.2d 913 (Tenn. 1984). While dismissal is a "harsh sanction," *Holt v. Webster*, 638 S.W.2d 391, 394 (Tenn. Ct. App. 1982), harsh sanctions have been used with some frequency to address a party's failure to comply with discovery orders. *See American Steinwinter v. American Steinwinter*, *Inc.* 964 S.W.2d 569 (Tenn. Ct. App. 1997); *Yearwood, Johnson, Stanton & Crabtree v. Foxland*, 828 S.W.2d 412 (Tenn. Ct. App. 1991); *Potts v. Mayforth*, 59 S.W.3d 167 (Tenn. Ct. App. 2001).

The court's memorandum recites the history of the discovery problems encountered in the case:

> Turning first to Interrogatory 2 propounded by the defendants to each of the corporate plaintiffs on August 21, 2000, the Court determines that the discovery seeks to uncover the factual details on which the misappropriation claims are based – a critical inquiry for the defendants' defense. Interrogatory 2 reads as follows.
>
> > INTERROGATORY NO. 2: For each financial transaction The Media Group, Inc. (hereinafter "Media Group") or International Media, Inc. (hereinafter "International Media") claims was in any way fraudulent to (sic) otherwise improper, state the following:
> >
> > (a)     The amount of funds improperly transferred;
> >
> > (b)     The name of the financial institution from which the money was transferred;
> >
> > (c)     The name of the entity, whether another financial institution or otherwise, to which the money was transferred;
> >
> > (d)     All persons involved in each transaction;

(e)     The name, address, and telephone number of each person having knowledge or whom you claim has knowledge that this transaction was fraudulent or otherwise improper;

(f)     The (sic) identify by document title and location each document that you claim supports or will claim supports or evidence in any way that the transaction or transfer of funds was fraudulent or otherwise improper;

(g)     A detailed description of why the transaction was fraudulent or otherwise improper; and

(h)     The date of the transfer.


The history of plaintiffs' responses to these contention interrogatories is that responses have been slow. The Court initially allowed the delay because the interrogatories seek detailed information and because the plaintiffs argued that the fraud claim depends on circumstantial evidence. The plaintiffs asserted that they needed discovery from the defendants before they were in a position to respond with meaningful discovery. The plaintiffs asserted that proving their case depends on obtaining voluminous checks and bank records from the defendants and having an accountant painstakingly trace those records. After several more delays in which the Court required the defendants to respond with more and specific responses to discovery, the Court determined that the plaintiffs had had enough time and had been provided with enough information by the defendants to provide specific answers to contention interrogatories. The Court regulated the case with deadlines so that the plaintiffs would respond to discovery and then initial dispositive motions would be considered. The Court, therefore, ordered the plaintiffs to answer the interrogatories by May 25, 2001. By that date the interrogatory answers had been outstanding for eight months. Moreover the plaintiffs had received substantial discovery of documents and answers to interrogatories from defendants so as to be able to answer the contention interrogatories.

The plaintiff corporations did respond but, from reviewing the answers, the Court judges the responses to be inadequate. The defendants then filed this motion to dismiss. The plaintiffs supplemented their answers, but still the plaintiffs failed to identify specific transactions that were improper, did not separate the claim between each of the corporate plaintiffs, did not identify documents that supported the claims and gave no specific dates other than stating the years of the alleged misappropriations.

The plaintiffs' defense to the claim of inadequate responses was that they had submitted documentation or notified the defendants what documents they intended

to use to support each allegation of fraud and that the documents were produced on May 25 and June 21, 2001. Upon inquiry by the Court, the defendants responded to this argument that the documents produced by the plaintiffs were "an unorganized mixture of bank statements, wire transfer slips (including some documents showing transfers with companies other than American Industries), some cancelled checks (some of which were unsigned copied (sic)), and various documents concerning Mood Cosmetics, Inc. (tax returns, expense/payee analysis reports, payment schedules, W-3 forms, and employer contribution forms submitted to the State of Connecticut)." The defendants further explained that on June 21, 2001, the plaintiffs produced 15 more pages of documents consisting of 12 checks from Noval International Services to American Industries, but that the documents in no way identify for the defendants which of the thousands of transfers shown on the documents were fraudulent or otherwise improperly made and that the documents do not identify the alleged fraudulent transactions by dates or provide information as to which transactions were fraudulent or why they were fraudulent.

These contention interrogatories are at the heart of the lawsuit. The failure of the plaintiffs to provide specific meaningful answers is holding up the disposition of the lawsuit: the defendants do not know what to defend against. The Court judges that based on the voluminous amount of information provided to the plaintiffs in discovery and the time they have had, the plaintiffs' responses could be comprehensive and detailed but they are not. The plaintiffs have delayed, and have not taken the time and made the effort to provide details as required by the Tennessee Rules of Civil Procedure.

As to the February 13, 2001 document request to the corporate plaintiffs on the fraud claim, the Court ordered production by May 25, 2001. The Court has reviewed the plaintiffs' responses and finds that the plaintiffs have not adequately responded and have not been diligent in responding to the discovery.

As to the February 13, 2001 request to plaintiff Sonny Howard, the Court finds that the documents requested are relevant to the above-captioned matter and were required by the Court to be produced by the plaintiffs on or before May 25, 2001 and the plaintiffs did not comply.

Not based on any one fact but considering the totality of the circumstances outlined above, the Court concludes that dismissal of the plaintiffs' remaining claims with prejudice is appropriate. The Court has stated above its findings of missed deadlines, dilatory and inadequate responses, and "dribbling" responses by the plaintiffs. In addition to that conduct being violative of the Tennessee Rules of Civil Procedure, the conduct has discredited the Court's authority in this case, has undercut the Court's attempts to manage the case with scheduling deadlines and progression orders, and has derailed disposition of this matter. While it is true that cases of fraud,

proven by circumstantial, documentary evidence, are time-consuming and difficult to develop, the Court concludes that it has more than adequately regulated discovery in this case to address that consideration and that the plaintiffs have without justification violated the Court's liberal May 25, 2001 deadline by providing incomplete and inadequate responses.

Significantly, on appeal the plaintiffs do not attack the chancellor's findings of fact. Rather they assert that they had done the best they could and that the chancellor's harsh sanction was an abuse of discretion. We think that the failure to identify the specific transactions that were improper, the failure to separate the claims between the individual plaintiffs, and the failure to identify documents that support their claims (after almost a year and repeated orders to comply) makes the order of dismissal something clearly within the chancellor's discretion. But beyond that, the chancellor's order goes on to identify other areas where the plaintiffs failed to completely and adequately respond to the discovery requests.

We affirm the chancellor's order of dismissal and remand the cause to the chancery court for further orders. Tax the costs on appeal to the appellants.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.